## GEAR GRINDING MACHINE CO. v. STUDEBAKER CORPORATION.

## STUDEBAKER CORPORATION v. GEAR GRINDING MACHINE CO.

(Circuit Court of Appeals, Sixth Circuit. March 7, 1925.)

Nos. 4121, 4122.

Patents ⊚⇒319(1)—Reasonable royalty may be allowed for infringement, where profits or damages cannot be ascertained.

Where on the proofs the profits from infringement cannot be ascertained with reasonable certainty, and the case presented is not one suitable for the awarding of damages as distinct from profits, a reasonable royalty will be made the measure of recovery.

Appeal and Cross-Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suit by the Gear Grinding Machine Company against the Studebaker Corporation. From the final decree, both parties appeal. Affirmed.

See, also, 270 F. 934.

D. Anthony Usina, of New York City (Wm. J. Belknap, of Detroit, Mich., on the brief), for plaintiff.

Edward Rector, of Chicago, Ill. (Walter E. Oxtoby, of Detroit, Mich., on the brief), for defendant.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. The Gear-Grinding Machine Company brought an action against the Studebaker Corporation for the infringement of the Ward & Taylor patent, No. 1,104,589, for improvements in gear-grinding machines, and for infringement of the Ward patent, No. 1,155,532, for improvements in trimming mechanism for grinder wheels of shaft-grinding machines. The District Court held both patents invalid, so far as sued upon, and entered a decree for defendant. This court reversed that decree and remanded the cause for an acounting.

The master found that it was impossible to determine with reasonable certainty either the profits made by the defendant in the use of the infringing device or the extent of the plaintiff's damages; that 15 cents was a reasonable royalty on each of the 323,423 shafts manufactured by the defendant, and upon this basis awarded to the plaintiff $48,522.45, with interest thereon from June 15, 1921, at 5 per cent. per annum, the statutory rate in Michigan. The District Court overruled the exceptions taken by both plaintiff and defendant to this finding of the master and approved the same. Both parties have appealed.

The nature of these patents, the claims in suit, and the finding of this court as to validity and infringement are all fully discussed in the opinion in the first appeal (270 F. 934), and will not be repeated here, except in so far as may be necessary. Claims 3, 7, and 8 of the Ward & Taylor patent were held valid and infringed by plaintiff's first practice, which continued from Septem-

ber, 1912, to August 23, 1916, and not infringed by either its second or third practice. It was further held that all the claims in suit of the Ward patent were infringed by defendant's first practice, and that claim 7 only of the Ward patent was infringed by both the second and third practice. It further appears that, since the trial in the District Court, the plaintiff has secured patents 1,271,495 and 1,273,016 to Ward, covering this splined shaft and the method of its production. These patents were not adjudicated in this suit, but they were received as evidence of the novelty of the shaft and machinery for making it.

Upon a careful examination of all the evidence introduced on the hearing before the master touching the question of defendant's profits and the damages of the plaintiff, this court has reached the conclusion that it is impossible to determine with any reasonable degree of certainty the actual profits, and the case is not one that would justify awarding all profits upon the theory of confusion, nor does the evidence present a case suitable for the awarding of damages as distinct from profits. For these reasons this court is of the opinion that this case is a proper one for the application of the rule of reasonable royalties. K. W. Ignition Co. et al. v. Temco Electric Motor Co. et al., 283 F. 873, 877, and cases there cited.

Nor is it seriously contended on the part of the plaintiff appellant that this is not a proper case for reasonable royalty. When the master inquired of counsel if he had any objection to invoking or seeking to recover under the reasonable royalty basis, he replied: "No, your honor. * * * I propose to do that thing in turn. My present plan is to provide three strings to my bow, if possible. * * * One is the profits which defendants made; the other, the damages which we actually sustained; the third, what would be a reasonable royalty to pay."

There was evidence offered on the part of the plaintiff appellant that the Hudson Company agreed in writing to pay 25 cents royalty, but it further appears that this amount of royalty also included a settlement of all claims for damages for prior infringement. Evidence was also offered tending to prove that the Northway Motor Company agreed to pay 17 cents royalty on each splined shaft manufactured by it, but this contract also included a further cash payment in settlement of threatened litigation. It is claimed on the part of the appellant that the Northway contract, although calling for 17 cents royalty, is in fact a contract to pay 25 cents

royalty, for the reason that the appellant took over certain machines that were of much greater value than the price fixed in the settlement and royalty contract. The parties having agreed upon the value of these machines, the appellant is hardly in position to dispute that value. If permitted to do so, it would not be of controlling importance in determining the amount of royalty to be paid by the Northway Company, for the reason the shafts that may be manufactured under this royalty contract may be so large in number as to make the value of the machines taken over by the appellant of little or no importance. In fact, the estimated production for nine months was 26,500 shafts. The defendant offered substantial evidence tending to prove that the cost, on the piece price plan then in force in its factory, was identical when the gear and trimming devices were used in combination under its first practice, which was held to be an infringement of both the Ward & Taylor and the Ward patents, and when used separately, as in its second and third practices, which infringed only claim 7 of the Ward patent.

It further appears from the evidence of the plaintiff that the use of the Ward trimming device, separate and apart from the gear-grinding device, under the second and third practice of the defendant, required but a fraction of a minute for each shaft, and was therefore a very inconsiderable part of the manufacturing cost. Upon a consideration of all of this evidence, this court would not be justified in reversing the finding of the master, confirmed and approved by the trial court.

The use of these patents enable the defendants to make splined shafts. The patents, therefore, necessarily include the process and the product. The theoretical license for which this reasonable royalty is allowed includes not only the right to make these shafts under the patents in suit, but also includes the right to use any other patent belonging to the plaintiff and necessarily involved in their production, even though not then issued. This, however, does not mean that the reasonable royalty fixed in this case would necessarily be a measure covering all the aspects of any splined shaft patent feature, but must be confined to these patents as they were here used, and where the claim for royalty arises as it does in this case. Nor does it mean that a reasonable royalty would necessarily be the same for future infringement of these and later patents, but, on the contrary, that this finding as to reasonable royalty applies solely to the facts of this

case, and for that reason neither party to this action can be foreclosed or embarrassed in other cases involving other process or product patents and relating to the manufacture of other shafts not included in this award.

For the reasons stated, the judgment of the District Court is affirmed.